IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| EUGENE E. FLANAGAN, Individually and as Administrator for the Estate of VINCENT ALLEN FLANAGAN, deceased, and CHASTITY HERRIDGE,<br><br>   Plaintiffs,<br><br>vs.<br><br>BNSF RAILWAY COMPANY, BNSF LOGISTICS, LLC, R. J. CORMAN RAILROAD GROUP, LLC, R. J. CORMAN RAILROAD SERVICES, LLC, TRANSPRO, INC., BURGENER TRUCKING, INC., and NTC LOGISTICS, LLC,<br><br>   Defendants. | CASE NO. 1:21-cv-00014<br><br><br><br><br><br><br><br>**AMENDED COMPLAINT** |

Plaintiffs, Eugene E. Flanagan, Individually and as Administrator for the Estate of Vincent Allen Flanagan, and Chastity Herridge, and for their causes of action and claims for relief against the Defendants, and each of them, states and alleges that at all time material hereto:

## PARTIES

1.  Plaintiff, Eugene E. Flanagan, is currently a citizen and resident of Council Bluffs, Pottawattamie County, Iowa, and the surviving father of the decedent, Vincent Allen Flanagan.

2.  Plaintiff, Chastity Herridge, is currently a citizen and resident of Clarion, Wright County, Iowa, and the surviving mother of the decedent, Vincent Allen Flanagan.

3.  Decedent, Vincent Allen Flanagan (hereinafter "Decedent"), was born December 21, 1994, and died on April 16, 2019 when he was then 24 years of age.

4.  Plaintiff Eugene E. Flanagan is the duly appointed constituted and qualified Administrator of the Estate of Vincent Allen Flanagan, having been so appointed as such by the

**EXHIBIT B**

District Court Clerk of Pottawattamie County, Iowa on April 19, 2019. A copy of such Letters of Appointment is attached hereto marked **Exhibit "A"**, and incorporated herein by reference.

5. Defendant, BNSF Railway Company (hereafter "BNSF Railway"), is a Delaware corporation authorized and is doing business in the State of Iowa and/or has engaged in continuous and systematic activities in the State of Iowa with its principal place of business located at 2650 Lou Menk Drive, Fort Worth, Texas.

6. Defendant BNSF Railway is a federally licensed motor carrier and is engaged in the performance of interstate carriage for hire by authority issued to it by the Federal Motor Carrier Safety Administration (FMCSA) pursuant to USDOT Number 281683.

7. Defendant, BNSF Logistics, LLC (hereafter referred to as "BNSF Logistics"), is a Delaware limited liability company authorized and is doing business in the State of Iowa and/or has engaged in continuous and systematic activities in the State of Iowa and all of the members of BNSF Logistics are citizens of the State of Delaware and its principal place of business located at 2710 S. 48th Street, Springdale, Arizona.

8. Defendant BNSF Logistics is a federally licensed freight forwarder/broker and is engaged in the performance of interstate carriage for hire by authority issued to it by the FMCSA pursuant to USDOT Number 2229700 and MC-439484

9. Defendant, R. J. Corman Railroad Group, LLC (hereafter "R. J. Corman Group") is a Kentucky limited liability company doing business in the State of Iowa and/or has engaged in continuous and systematic activities in the State of Iowa and all of the members of R. J. Corman Group are citizens of the State of Kentuckiy and its principal place of business located at 2101 R J Corman Drive, Nicholasville, Kentucky.

10. Defendant, R. J. Corman Railroad Services, LLC (hereafter "R. J. Corman Services"), is a Kentucky limited liability company authorized and is doing business in the State of Iowa and/or has engaged in continuous and systematic activities in the State of Iowa and all of the members of R. J. Corman Services are citizens of the State of Kentucky and its principal place of business located at 2101 R J Corman Drive, Nicholasville, Kentucky.

11. Defendant R. J. Corman Services is a federally licensed motor carrier/shipper/broker and is engaged in the performance of interstate carriage for hire by authority issued to it by the FMCSA pursuant to USDOT Number 923465 and MC-398384.

12. Defendant, Transpro, Inc. (hereafter "Transpro"), is a Colorado corporation and is doing business in the State of Iowa and/or has engaged in continuous and systematic activities in the State of Iowa with its principal place of business located at 7301 SW Frontage Road, Ste. 3, Fort Collins, Colorado, and operates under the trade name of Transpo, Burgener Transpro, Transpro-Burgener and Transpro Inc d/b/a Burgener Trucking.

13. Defendant Transpro is a federally licensed motor carrier and is engaged in the performance of interstate carriage for hire by authority issued to it by the Federal Motor Carrier Safety Administration (FMCSA) pursuant to USDOT Number 1470617 and MC-555340.

14. Defendant, Burgener Trucking, Inc. (hereafter "Burgener Trucking"), is a Colorado corporation and is doing business in the State of Iowa and/or has engaged in continuous and systematic activities in the State of Iowa with its principal place of business located at 7301 SW Frontage Road, Ste. 3, Fort Collins, Colorado, and operates under the trade name of Burgener Trucking and Burgener Trucking Inc d/b/a Transpro Inc.

15. Defendant Burgener Trucking is a federally licensed motor carrier/shipper/broker and is engaged in the performance of interstate carriage for hire by authority issued to it by the

Federal Motor Carrier Safety Administration (FMCSA) pursuant to USDOT Number 272481 and MC-148307.

16.     Defendant, NTC Logistics, LLC (hereafter "NTC Logistics"), is a Nebraska limited liability company doing business in the State of Iowa and/or has engaged in continuous and systematic activities in the State of Iowa and all of the members of NTC Logistics are citizens of the State of Nebraska and its principal place of business located at 3330 Deer Haven Drive, Gering, Nebraska.

17.     Defendant NTC Logistics is a federally licensed motor carrier/shipper/broker and is engaged in the performance of interstate carriage for hire by authority issued to it by the Federal Motor Carrier Safety Administration (FMCSA) pursuant to USDOT Number 68033 and MC-121066.

## JURISDICTION and VENUE

18.     This Court has jurisdiction over Defendants and this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendants. All of the Defendants are either incorporated, a citizen and/or has the principal place of business outside the state in which the Plaintiffs reside..

19.     The amount in controversy between Plaintiffs and Defendants exceed $75,000.00, exclusive of interest and cost.

20.     The Court also has supplemental jurisdiction pursuant to 28 U.S.C. §

21.     Venue in this Court is proper under 28 U.S.C. §§ 107 and 1391 in that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the State of Iowa.

**GENERAL ALLEGATIONS and STATEMENT OF FACTS**

22. Defendants, and each of them, employed personnel who were acting as agents and employees of said Defendants.

23. Defendants, and each of them, enjoyed a community of interest in a common business undertaking with an understanding as to the sharing of profits and losses, and/or right of joint control in the shipment involved in the collision that is subject matter of the present case.

24. Defendants' actions and/or inactions, and each of them, described more fully herein, were committed in the course and scope of Defendants' venture, employment, and/or agency relationship with each other

25. Defendants, and each of them, are vicariously liable for the negligence of their employees, agents and representatives, including, but not limited to, under the doctrine of *respondeat superior*, all theories of agency, and/or all theories of joint venture.

26. Starting on or about March 13, 2019, widespread flooding and flash flooding events began to impact the States of Iowa and Nebraska due to rapid snow melt combined with heavy rains which caused dangerous flood conditions across the State of Iowa.

27. Numerous highways and railroad tracks in the State of Iowa was damaged as a result of the widespread flooding.

28. On April 16, 2019, all lanes of Interstate 29 (hereafter "I-29") were closed to the public due to the flooding.

29. Prior to April 16, 2019, when I-29 was first closed to the public due to the widespread flooding, Defendant BNSF Railway took control over I-29 in order to direct various trucking and construction companies hired by Defendant BNSF Railway to utilize I-29 to repair

railroad tracks owned and operated by Defendant BNSF Railway which were damaged due to the flooding.

30. That the part of I-29 taken over by Defendant BNSF Railway as a result of the flooding and closed to the public contained numerous objects which obstructed the view of the of the drivers of the various trucking and construction companies hired by Defendant BNSF Railway and or its agents to repair its damaged railroad tracks.

31. Sometime prior to April 16, 2019, Defendant BNSF Railway hired Defendant R. J. Corman Group and/or Defendant R. J. Corman Services to repair Defendant BNSF Railway's railroad tracks damaged by the flooding.

32. Sometime prior to April 16, 2019, Defendant BNSF Railway, Defendant R. J. Corman and/or Defendant R. J. Corman Services entered into a motor carrier/broker/shipper agreements with Defendant BNSF Logistics to arrange for the transport of various goods or commodities by interstate and/or intrastate commerce.

33. On or about March 19, 2019 Defendants entered into a motor carrier/broker/shipper agreement with Defendant NTC Logistics to arrange for the transport of various goods or commodities by interstate and/or intrastate commerce.

34. Prior to April 16, 2019, Defendant NTC Logistics entered into a motor carrier/broker/shipper agreements with Defendant Transpro and/or Defendant Burgener Trucking to arrange for the transport of various goods or commodities by interstate and/or intrastate commerce.

35. HGT Trucking Inc. (hereafter "HGT Trucking") is a federally licensed motor carrier and is engaged in the performance of interstate carriage for hire by authority issued to it by the Federal Motor Carrier Safety Administration (FMCSA) pursuant to USDOT Number 1882725.

36. HGT Trucking was operating as a "motor carrier" and "employer" of drivers of "commercial motor vehicles" as defined in the Federal Motor Carrier Safety Regulations and therefore, was subject to such rules and regulations as promulgated and codified within 49 C.F.R. § 300, *et seq*.

37. Prior to April 16, 2019, the U. S. Department of Transportation assigned HGT Trucking an "Unsatisfactory" rating as a motor carrier and there was no documentation indicating any corrective plan was taken within 30 days of the such rating

38. On April 16, 2019, Defendant Transpro and/or Defendant Burgener Trucking hired HGT Trucking to transport and deliver a load of type 2 rock blanket from Norris Quarries in Maitland, Missouri, to Cullum, Nebraska.

39. On April 16, 2019, Noelio Orihuela was employed by HGT Trucking and was operating a semi-tractor trailer truck owned by HGT Trucking that was transporting and delivering the load of type 2 rock blanket from Norris Quarries in Maitland, Missouri, to Cullum, Nebraska.

40. On April 16, 2019, at approximately 5:47 o'clock p.m., Decedent was operating a 2014 Dodge pickup truck northbound on I-29 at or near mile marker 25 a few miles south of Pacific Junction, Fremont County, Iowa.

41. Mr. Orihuela was operating a 2001 Kenworth tractor and trailer, owned by HGT Trucking, and travelling northbound in the southbound lanes of I-29 in the flood/construction zone when, suddenly and without warning, attempted to cross over the concrete crossover at 25.40mm of the southbound travel, and crossed over into to the northbound lanes of I-29 and violently crashed into Decedent's pickup truck causing Decedent's pickup to roll and subsequently come to a rest on the roof of Decedent's vehicle.

42. As a result of the collision, Decedent sustained severe and permanent injuries and damages and subsequently died as a result of such injuries.

## CAUSES OF ACTION and CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

## NEGLIGENCE – DEFENDANT BNSF RAILWAY

43. Defendant BNSF Railway had a duty to provide a safe workplace for lawful entrants so as to prevent any unreasonable risk of harm to lawful entrants, including Decedent, and further had a duty to protect and/or warn lawful entrants, including Decedent, against dangerous conditions on I-29.

44. Defendant BNSF Railway, by and through by and through its agents, representatives and employees, while in the scope and course of their employment and agency, knew or should have known that I-29 contained numerous objects and/or debris which obstructed the view of the of the drivers of the various trucking and construction companies hired by Defendant BNSF Railway to repair its damaged railroad tracks and therefore caused a hazard to such drivers, including the Decedent.

45. The safety and maintenance of I-29 was the responsibility of Defendant BNSF Railway, by and through by and through its agents, representatives and employees.

46. Defendant BNSF Railway, by and through its agents, representatives and employees, were negligent in one or more of the following particulars, to wit:

    a. In failing to use proper care under the circumstances;

    b. In failing to warn lawful entrants, including Decedent, of the dangers and hazardous conditions defendant created;

    c. In failing to make a timely inspection of this part of I-29 to determine if it was free of any hazards and to make sure it was safe for lawful entrants, including Decedent;

    d. In failing to timely remove any hazards on this part of I-29;

    e. In failing to maintain this part of I-29, commonly used by lawful entrants, including Decedent, in a safe condition when it knew or should have known that this part of I-29 was hazardous to lawful entrants, including Decedent;

    f. In failing to place a warning signs on this part of I-29;

    g. In creating a hazard;

    h. In failing to warn lawful entrants when it knew that this part of I-29 was unreasonably dangerous to lawful entrants, including Decedent; and

    i. In failing to train its employees and or agents to recognize, identify, and warn of hazards in this part of I-29.

47. As a direct and proximate result of Defendant BNSF's negligence and/or reckless conduct, Plaintiffs sustained damages and losses as set forth below.

## SECOND CAUSE OF ACTION

### NEGLIGENT SELECTION OF SHIPPING BROKER/NEGLIGENT BROKERING
### ALL DEFENDANTS

48. HGT Trucking was directed and/or controlled by Defendants BNSF Railway, BNSF Logistics, R. J. Corman Group, R. J. Corman Services, Transpro, Burgener Trucking and/or NTC Logistics..

49. Defendants BNSF Railway, BNSF Logistics, R. J. Corman Group, R. J. Corman Services, Transpro, Burgener Trucking, NTC Logistics and/or Nebraska Transport contracted with one or more of each other, to provide transportation and/or trucking services to haul rock for railroad track repair due to flooding for Defendant BNSF Railway.

50. On April 16, 2019, HGT Trucking and Mr. Orihuela were directed by Defendants BNSF Railway, BNSF Logistics, R. J. Corman Group, R. J. Corman Services, Transpro, Burgener Trucking and/or NTC Logistics to transport and deliver a load of type 2 rock blanket from Norris

Quarries in Maitland, Missouri, to Cullum, Nebraska, and were directed through a contract carrier agreement, contract broker agreement and/or lease agreement between or among the Defendants.

51. Under such contract carrier agreement, contract broker agreement and/or lease agreement, Defendants BNSF Railway, BNSF Logistics, R. J. Corman Group, R. J. Corman Services, Transpro, Burgener Trucking, NTC Logistics and/or Nebraska Transport controlled, managed and/or directed how the load was to be transported, including, but not limited to, the time the shipment was to be picked up and delivered, the route to be taken, payment restrictions, and driver instructions.

52. Defendants, and each of them, who regularly engage in commercial enterprise involving the selection of motor carriers as an integral part of the business, had a duty to exercise reasonable care to select a competent carrier and driver.

53. Defendants, and each of them, owed a duty to the general public to select a competent motor carrier to haul the load Mr. Orihuela was transporting at the time of the crash as described herein.

54. Based on publically available information at the time of the crash as described herein, Defendants, and each of them, know or should have known that HGT Trucking was an unsafe motor carrier, and that HGT Trucking utilized incompetent, unsafe, and careless drivers, such as Mr. Orihuela, and that HGT Trucking regularly entrusted its commercial vehicles to such drivers.

55. The crash between Decedent and Mr. Orihuela was the direct and proximate result of Defendants' negligence, and each of them, in brokering the load carried owned and operated by HGT Trucking to an unsafe company and/or or driver, and/or the failure to use the requisite degree of care in selecting a commercial carrier.

56. As a direct and proximate result of Defendants' negligence and/or reckless conduct, and each of them, Plaintiffs sustained damages and losses as set forth below.

## DAMAGES COMMON TO ALL CLAIMS AND COUNTS

57. The joint, combined and/or negligent and/or reckless actions or omissions and/or intentional violations of applicable regulations and statutes as described herein of the Defendants, and each of them, directly and proximately caused substantial and permanent injuries and related damages to Plaintiffs and Decedent in the following particulars:

   a. Fair and reasonable medical expenses from the date of Decedent's injuries until time of death;

   b. Fair and reasonable value of lost wages from the date of Decedent's injuries until time of death;

   c. Physical and mental pain and suffering and loss of enjoyment of life from the date of Decedent's injuries until time of death;

   d. Decedent's loss of function of the mind and body from the date of Decedent's injuries until time of death;

   e. The present value of the additional amounts Decedent would have expected to reasonably accumulate as a result of his own effort, if Decedent had lived out the term of his natural life;

   f. Funeral and burial expenses, as well as he interest on the cost of the funeral and burial of Decedent for the period between the date of his premature death and the date on which Decedent could have been expected to die; and

   g. Other damages to be specified.

58. As a direct result of Defendants' negligence, and each of them, Plaintiffs, individually, have suffered and will in the future continue to suffer damages as a result of the loss of companionship, comfort, guidance, affection, the aid of the parent in every parental relation, general usefulness, industry and attention within the family, of their son, Vincent Allen Flanagan.

11

59. These actions and omissions of Defendants, and each of them, relating to the crash as described herein, were willful, wanton and reckless, and demonstrated a complete indifference and conscious disregard for the law and for the safety of others, including the Decedent.

## PUNITIVE DAMAGES

60. Defendants, and each of them, know or should have known that HGT Trucking was an unsatisfactory motor carrier, and that HGT Trucking utilized incompetent, unsafe, and careless drivers, such as Mr. Orihuela, and that HGT Trucking regularly entrusted its vehicles to such drivers, or in the exercise of due care, should have known that HGT Trucking was an unsatisfactory motor carrier, and that HGT Trucking utilized incompetent, unsafe, and careless drivers, such as Mr. Orihuela, and that HGT Trucking regularly entrusted its vehicles to such drivers.

61. Defendants conduct in hiring/ selecting HGT Trucking constituted a willful and wanton disregard for the rights or safety of others and caused actual harm to Plaintiffs.

62. Defendants conduct in creating a hazard constituted a willful and wanton disregard for the rights or safety of others and caused actual harm to Plaintiffs.

63. Defendants' outrageous and unconscionable conduct warrants and award of exemplary and punitive damages against the Defendants in an amount appropriate to punish and make an example of Defendants, and deter Defendants and others from like conduct in the future.

## JURY DEMAND

Plaintiffs hereby demand a jury trial in this matter on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment against the Defendants, and each of them, jointly and severally, in an amount which would reasonable compensate the Plaintiffs for their special damages, general damages, punitive damages, injuries, losses, death and other damages,

together with interest thereon at the maximum legal rate and costs herein expended, and for such other relief that the Court may deem just and proper.

DATED this 22nd day of June, 2021.

        EUGENE E. FLANAGAN, Individually and as Administrator for the Estate of VINCENT ALLEN FLANAGAN, deceased, and CHASTITY HERRIDGE, Plaintiffs,

By:   /s/ Christopher P. Welsh
Christopher P. Welsh, - IA #AT0008451
WELSH & WELSH PC, LLO
9290 West Dodge Road
204 The Mark
Omaha, Nebraska 68114
Phone: (402) 384-8160
Fax:   (402) 384-8211
cwelsh@welsh-law.com
ATTORNEYS FOR PLAINTIFFS

    and

David E. Richter – IA #AT0006638
The Law Offices of David E. Richter
535 West Broadway
Suite 202
Council Bluffs, Iowa 51501

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

  I hereby certify that on the _____ day of _____, 2021, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| David J. Schmitt<br>dschmitt@ldmlaw.com | Michael Lawton Moran<br>mmoran@ekoklaw.com |
| Matthew V. Rusch<br>mrusc@eslaw.com | Adam Jeffrey Wachal<br>adam.wachal@koleyjessen.com |

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:  None.

                  /s/ Christopher P. Welsh

E-FILED  2019 APR 19 2:57 PM POTTAWATTAMIE - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR POTTAWATTAMIE COUNTY

IN THE MATTER OF THE

ESTATE OF VINCENT ALLEN FLANAGAN

Case No. 04781  ESPR043489

**Letters of Appointment**

Docket Event Code:  LEAP

KNOW ALL PERSONS BY THESE PRESENTS:
That having been duly appointed and qualified as Administrator of the above entitled matter,

EUGENE E. FLANAGAN

IS vested with all powers authorized by law in the premises.

Letters issued:  04/19/2019

/s/ JUNE A WOODBURY
Clerk of Court/Designee
POTTAWATTAMIE County



**EXHIBIT A**